Crippen, J.
It is claimed on the part of the heirs of Andrew H. Newcomb, deceased, that he had an interest in lots number 118, 121, 126 and 130½ of the Onondaga salt springs reservation, which descended to them on his death. On the part of the widow of the deceased, it is insisted that the interest of the decedent in said lots, and in the erections thereon, was personal property, subject to distribution as such under the statute. This presents the question raised on this appeal.
The statute provides that whenever several persons shall hold and be in possession of any lands, tenements or hereditaments as joint tenants or as tenants in common, in which one or more of them shall have an estate of inheritance,, or for life or lives, or for years, any one or more of them, being of full age, may apply for partition and division of such premises. (2 R. S., 317, § 1.) The question arises whether the parties to this action or any of them have an estate of inheritance, or for life or lives, or for years, in the above mentioned lots.
The constitution in force, and under which the decedent acquired permission to enter upon these lots, declared that *617 the legislature should “ never sell or dispose of the salt springs belonging to the state, nor the lands contiguous thereto which might be necessary or convenient for their use, but the same should be .and remain the property of this state.” (Const. of 1821, art. 7, § 10.) The constitution of 1846 made a change in the fundamental law relating to the lands of the state contiguous to the salt springs. Section 7 of art. 7 declares that the legislature shall never sell or dispose of the salt springs belonging to the state. That the lands contiguous thereto, and which might be necessary and convenient for the use of the salt springs, may be sold by authority of law and under the direction of the commissioners of the land office for the purpose therein specified. The permission however, to occupy the lands in question was not acquired under any law passed since the constitution of 3846 was adopted.
The legislature, in addition to the provisions of the constitution of 1821, enacted that the salt springs belonging to the state and the lands contiguous thereto, necessary or convenient to their use, should be and remain the property of the state, and that the legislature could never sell or dispose of the same or any part thereof. (1 R. S., 252, §. 1.) This statute was in force in 1850, when the decedent acquired from the state permission to make erections on lot number 130½ for the manufacture of coarse salt. The statute relating to the salt springs malies provision that any individual, or company incorporated pursuant to § 90 of said act, intending to erect works for the manufacturing of coarse salt, before erecting any works on the lands of the state set a’part for that purpose, shall make application to the commissioners of the land office, setting forth therein the amount of capital intended to be invested in such manufactory, and the quantity of land necessary to the erection thereof; the commissioners of the land office are then required to set apart such land, or so much as they may deem reasonable for the purpose, in a compact form. Such individual or *618 company is allowed four years in which to complete the works on the lands thus set apart; and is also required within one year to commence such work and actually expend thereon at least one-tenth part of the capital specified in the application, or such location will become void, and the land thereafter be liable to be located by any other individual or company. Any part of such location which at the end of four years shall not be actually occupied by manufactories of coarse salt, pursuant to the original location, may be again set apart by the commissioners of the land office to any other person or company for the erection of such manufactories. (1 R. S., 267, §§ 90, 91, 92, 93, 94, 95.)
It is admitted, and indeed the whole case shows, that the right of the decedent to make the erections on the state lands for the manufacturing of coarse salt, was acquired in pursuance of the foregoing provisions of the Revised Statutes. Did the decedent acquire thereby an estate of inheritance, or for life or lives, or for years, in said premises ? I think not. The object of the constitution, as well as the whole course of legislation, very clearly establishes a settled design to secure and protect the state in the unqualified right, at all times, of resuming the actual control and disposition of the salt springs and the lands contiguous thereto. The state could make no grant of the property; the constitution and the laws had declared that the salt springs and the lands contiguous thereto, which might be convenient for their use, should be and remain the property of the state. No act of the legislature, or of the commissioners of the land office, could in the least degree, transfer or otherwise impair the title of the state ; it must vest there and nowhere else. This being so, it necessarily follows that none of the parties to this action can have an estate of inheritance, or for life or lives, or for years in the lots above mentioned.
The legislature, under the provisions of the constitution, authorized the commissioners of the land office to set apart so much of the state lands as they might deem reasonable *619 for the purpose of an individual or a corporation for the erection thereon of manufactories of coarse salt. No title to the land was transferred thereby, for the obvious reason that the constitution had forbidden it. Nothing could pass, therefore, to the person or company obtaining the right of erecting salt manufactories, except a naked license to enter upon the state lands and make and enjoy such erections during the pleasure of the state. In the opinion of Mr. Justice Paige, delivered in this court in the case of Parmelee v. The Oswego and Syracuse Railroad Company, he remarked that where a party makes a location on any part of the salt springs reservation, erects his buildings for the manufacture of coarse salt within the time prescribed by statute, he acquires no legal interest or estate in the lands covered by the works, and has only an equitable interest in his erections. (2 Seld., 81.) I can see no good reason why the erections made on the lots in question by the decedent, and perhaps the .license to occupy the same for the manufacture of salt, may not be regarded as having been made and held for the purposes of trade and manufacture, and consequently pass to his personal representatives.
In conclusion, I am satisfied that neither of the parties has such an estate in the lots above mentioned as will authorize a partition thereof.
The judgments of the general and special terms should be reversed, and the complaint as to these lands dismissed, with costs to the defendant, Mary D. Newcomb.
Gardiner, Ch. J.
The sole question in this case is, whether Andrew H. Newcomb, who died intestate, had an estate or interest in the land in controversy which descended to his heirs at law. The premises constitute a part of the Onondaga salt springs reservation, and were “set apart” by the commissioners of the land office under the statute (1 R. S., 267, 93) enacted prior to the adoption of the constitution of 1846.
*620 The 10th sec. of art. 7. of the constitution of 1821, anion" other things, declares that the legislature “ shall never sell or dispose of the salt springs, or the lands contiguous thereto which may be necessary or convenient for their use, nor the navigable communications or any part or section thereof; but the same shall be and remain the property of this state.” By this provision the legislature is prohibited, not merely from alienating the lands in fee, but from making any sale of them whether conditional or absolute; and to make the prohibition more emphatic, they are forbidden “to dispose of them.” This word, in the sense in which it is used in this connection, means “to part with to another,” “to put into another’s power and control,” “ to give away or transfer by authority.” The framers of the constitution did not intend to forbid any particular species of alienation. The language of that instrument is not that the legislature should transfer these lands by grant, by license irrevocable, or upon condition subsequent; but that they sb ould not dispose of them in any manner; “ but the same shall be and remain the property of this state.” If, then, by the setting apart by the commissioners of the land office under the act of 1821, the decedent acquired an estate of inheritance, what he received the state must have parted with, and, to that extent, by legislative enactment disposed of the lands reserved, and they consequently thus far'ceased “to be and remain the property of this state.”
I agree fully with the counsel for the respondent, and with the learned judge who delivered the opinion of the supreme court, that the writing under which this claim is made is not a lease, and with the former, that if the interest, by whatever name it may be called, is not of the durable character claimed for it by the respondent, the only other alternative is, that it is held at the mere will and pleasure of the state. The language of the 93d sec. (1 R. S., 267) is exceedingly guarded; it confers no right upon The commissioners to bargain with the applicants. The *621 latter are to locate the lands, and the commissioners are to set so much of them as they shall deem reasonable for the purpose of such individual or company, apart, as such individual or company may select. There are no words pertaining to a grant of any interest whatever. It is a mere designation of the boundaries, including the whole or a part of the premises previously located by the manufacturer. It is true, that as a consequence of this location, certain things are to be performed by the applicant; but their performance does not increase his interest in the land, but is a condition upon which the location and setting apart are made to depend. There would be no impossibility in a tenant at will, in the strictest sense of the term, contracting to make permanent improvements upon the premises upon which he "was about to enter, as the only condition upon which he could retain the interest, slight as it was, which he was to receive. The landlord might terminate the tenancy before, or when the improvements were made; he might not for fifty years, and the possibility would be worthless, or valuable, according to the character of the lessor for justice, fair dealing and liberality. Whether he sustained this character or the reverse of it would not, however, make the slightest difference in the legal rights of the tenant. A similar arrangement was made with the decedent as the result of the action of the commissioners under the law and the constitution. The commissioners set apart, for the purposes of the decedent, lands by him selected. The “ location,” in the language of the statute, was to be void, if a certain sum was not expended within one year, and the land might “ be located by any other individual or company.” (1 R. S., 267, § 94.) There was nothing in the “ setting apart,” or in the condition, to create an estate of any description. The words of the statute, so far from being usual or appropriate for that purpose, are obviously adopted to exclude any such conclusion.
*622 It is not said that the estate or right of possession for a definite or indefinite period shall be void, but the location.” The naked occupancy shall, at all events, without any act upon the part of the state or its agents, absolutely cease, and the lands be deemed vacant if this condition is not complied with. If the condition is fulfilled, the setting apart shall secure the manufacturer against the location of the same premises by any other person, and his occupancy may continue for the specific purpose of manufacturing coarse salt until the state otherwise determines. In effect, the legislature say, we have no authority to sell or dispose of these lands; but they are now, and must remain the property of the state. All this is either expressly declared in the constitution, the law, and the written instrument of the commissioners, or necessarily implied from their various provisions. The decedent was bound to know that lie could acquire no property in these lands, for the legislature could grant none. His heirs at law took none by descent. There is nothing, therefore, to partition, and the complaint as to these lands should have been dismissed.
The judgment of the supreme court should be reversed and the complaint as to these lands, dismissed.
Judgment reversed.